THOMAS BREEN V. THE TEXAS AND PACIFIC RAILROAD CO.

1. RAILROAD—RIGHT TO EJECT PASSENGER NOT PAYING FARE.— The right of railway companies in this State to eject from their cars, at a regular stopping place, without the use of unnecessary force, all persons failing to pay fare or presenting, when demanded, a ticket or other evidence of their right to a seat thereon, cannot be questioned.

2. RAILROAD REGULATIONS—STOP-OVER CHECKS.—Railroads may prescribe, as a regulation, that passengers shall not stop off a train and complete their trip, for which they may have paid, without obtaining "stop-over tickets."

3. SAME.—The individual check of a conductor upon one train, given a passenger on taking up his ticket, is not evidence of a right to be carried on another train, under another conductor.

4. ASSAULT BY RAILROAD CONDUCTOR.—See facts held insufficient to show an unlawful use of violence to a passenger by a railroad conductor.

5. COSTS—STATUTE CONSTRUED.—In suits for damage, for assault and battery, or slander, in the District Court, where plaintiff recovers less than twenty dollars, he cannot recover costs. In such case judgment should be rendered against each party for his own costs. (Paschal's Dig., art. 1467.)

6. TENDER.——The plea of tender does not apply to suit for unliquidated damages; and where a verdict and judgment were in such suit rendered for only the sum tendered, it was error to render judgment for costs against plaintiff.

APPEAL from Wood. Tried below before the Hon. M. H. Bonner.

The facts are given in the opinion.

*John F. Jones,* for appellant.

*F. B. Sexton,* for appellee.

MOORE, CHIEF JUSTICE.—On the 6th day of May, 1874, appellant purchased of appellee, for the sum of four dollars and thirty cents, a ticket entitling him to ride in appellee's cars from the city of Jefferson, Marion county, Texas, to Mineola, in Wood county, Texas; and on the same day he entered appellee's passenger car, on its west-bound train, for

the purpose of going from the former to the latter place. Some short time after entering said car, and after the train had left Jefferson, the conductor thereof took up his ticket and gave him "a piece of white card-board about two inches long and a half inch wide, having the figures 12, 6, and 1 marked on it in red pencil marks," which card, the testimony shows, was the individual check or token of the conductor by whom it was given, and was intended to show or indicate that said conductor had taken from appellant a ticket, on said sixth day of the month, which entitled him to ride on said train to station number twelve, and was to be taken up by the conductor, before leaving the car, on the arrival of the train at the point called for in appellant's ticket. On the arrival of the train at Longview, it was publicly announced, in the hearing of the passengers and of appellant, that it would stop twenty minutes for supper; whereupon appellant, who still held said conductor's check, left the train for the purpose of seeing a party with whom he had business, intending, however, to return in time to continue his journey on said train to Mineola. But before appellant came back to the depot, although, as he insists, he returned and was at the depot ready to have resumed his seat on the cars within less than twenty minutes, said train had left, thereby rendering it impossible for appellant to continue his journey on that day. On the arrival at Longview on the next day, the 7th of May, 1874, of appellee's west-bound train, appellant, without having purchased a ticket from Longview to Mineola, and without any evidence to show that he was entitled to ride on the train of the day from said place to Mineola, entered said cars, with the view of completing the trip for which he had purchased and subsequently surrendered his ticket on the day before, as previously stated. Shortly after the train left Longview, the conductor—not, however, the one in charge of the train of the previous day—demanded of. appellant the payment of fare or to exhibit his ticket; thereupon appellant showed him said check given him by the con-

ductor of the previous train, claiming that he was entitled ·to ride on the cars to Mineola, as he had already paid his fare from the city of Jefferson to that place, and had been wrongfully, ·as he insisted, left by the train of the day before in Longview.    The conductor, however, refused to recognize this check as evidence of appellant's right to ride on the cars in his charge, and informed appellant that unless he had a ticket or other evidence of his right to do so he must pay fare.    This, appellant positively declined to do; and thereupon the conductor stopped the train at the next station, and again informed appellant that unless he paid his fare it was his duty to put him off the train.    Appellant, however, still refused to pay fare; whereupon the conductor, with the assistance of a brakeman, loosened his hands from the seat on which he was sitting and raised him to his feet, for the purpose and with the declared intention of ejecting him from the cars, when appellant said he would pay the fare demanded rather than be put off the train.    He was at once released by the conductor, and then paid $2.55, the amount demanded of him, and was permitted to proceed on his journey without further molestation or interruption.

This brief outline of the circumstances which led to this action, though by no means as full as presented in the transcript, will suffice for a proper comprehension of the questions involved, and the view taken of them by this court, when considered in connection with the further fact that appellant does not seek a recovery of damages for his detention at Longview, or loss of his trip by being left there, but claims damages merely for the assault charged to have been made upon him by the servants of appellee, and being thereby compelled to pay fare from Longview to Mineola on said train of 7th of May, 1874.

The right of railway companies in this State to eject from their cars at a regular stopping place, without the use of unnecessary force, all persons failing to pay fare or presenting, when demanded, a ticket or other evidence of their right to

a seat thereon, cannot be questioned. It is not pretended that appellant paid or offered to pay a fare to the conductor by whom the alleged assault is charged to have been made prior thereto. The evidence puts it beyond all question that no undue or excessive force or violence was used to eject appellant from the cars. It is also clear that there was testimony before the jury tending to prove that there was no effort or demonstration on the part of the conductor or any other servant of appellee to eject appellant from the train, except at a regular station for the getting on and off of passengers, nor until after the train had been stopped. It certainly follows, then, that appellant has no cause to complain, unless he exhibited to the conductor proper evidence of his right to ride upon his train. Did he do this ? Unquestionably, he did not. The evidence shows beyond all question that the card exhibited to the conductor for this purpose was the mere individual check or token of the conductor of the previous train, to serve him as a reminder, during the trip on which it was going, that he had taken up appellant's ticket. And common sense teaches us that it was so intended and could serve no other purpose. Certainly no one could imagine that a mere piece of white card-board, with pencil marks such as were on this card held by appellant, which might be made by any one, could be held by a conductor of another train as evidence of the holder's right to ride, whenever presented, from any station at which the holder might get on the train, to the station number indicated by the marks on the card. If so, an unscrupulous passenger might travel by railroad when and where he pleased, by simply making cards of this sort, instead of purchasing tickets or paying fare. And if it was admitted that the figures on the card were known by the conductor to whom it was presented to have been made by his fellow-conductor, still he could not tell that the holder had not travelled by his proper train until within one station of the place for which the check called, and then, getting off the train without surrendering it, had subsequently

gone back to some station on the road, and, again entering the cars, presented said card as evidence of his right to a seat. It is to be borne in mind that the question is not whether the custom of taking up tickets and giving conductor's checks to passengers in lieu thereof is a reasonable or proper one to which passengers could be forced to assent. Concede that it is not; and concede, also, that appellant did not voluntarily surrender the ticket which he purchased authorizing him to travel in appellee's cars from Jefferson to Mineola. This does not affect the question of his right to travel by a different train, from Longview to Mineola, from that on which he entered the previous day, without producing a ticket or legal evidence of its surrender before he had completed his trip. Moreover, the evidence shows that passengers are not authorized to stop off a train and afterwards complete their trip unless they get a stop-over ticket; and certainly we see no reason why railways may not prescribe a regulation of this sort, which seems as essential to the convenience of passengers as to the security of the company from such demands as that out of which this suit has its origin. It is also to be remembered that appellant does not in this action seek, as has been previously said, to recover the damages sustained by his having been wrongfully left at Longview on the preceding day, if, in truth, such was the fact. It is not, therefore, material in this case that we should inquire whether his failure to continue his journey on that day was occasioned by his own negligence or that of appellee. If appellant was wrongfully prevented from completing his trip from Jefferson to Mineola, after entering appellee's cars, on the 6th of May, 1874, he is entitled to recover the damage he thereby sustained; but that fact did not relieve him from the necessity of paying fare to the conductor of the train on which he got the next day, or presenting satisfactory evidence of his right to ride thereon.

It follows from what has been said that appellant has no right to complain of the insufficiency of the verdict, but, on

the contrary, the evidence did not warrant a verdict in his favor in this case for any amount whatever. Had appellee asked the court to have set the verdict aside for want of evidence to support it, its request should have been granted. This, however, was not done. Such judgment should therefore have been given by the court as was warranted by the verdict of the jury. Admitting that appellee had, before the bringing of his suit, tendered appellant the amount found by the jury, and that this amount had been deposited in the court, still the judgment should not have been given in favor of appellee for costs, because the plea of tender is not applicable on an action for the recovery of unliquidated damages, (Sedg. on Dam., 580,) but each party should have been taxed with the costs respectively incurred, as provided by statute, where the damages recovered in actions of this kind are less than twenty dollars. (Paschal's Dig., art. 1467.)

For the error in the court below adjudging the cost against appellant, the judgment must be reversed and reformed; and judgment is here rendered in favor of appellant for the sum of two dollars and fifty-five cents, the amount found in his favor by the jury, with interest thereon from the date of the judgment in the court below; that each party be taxed with the cost incurred by such party respectively in the District Court; and that appellant recover the cost incurred in this court, &c.

REVERSED AND REFORMED.

[Justice BONNER did not sit in this case.]